# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LYNNE E. EBERT, | ) |
| | ) |
| PLAINTIFF, | ) |
| | ) |
| vs. | ) CASE NO. 06-CV-85-FHM |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the | ) |
| Social Security Administration,[1] | ) |
| | ) |
| DEFENDANT. | ) |

## ORDER

Plaintiff, Lynne E. Ebert, seeks judicial review of a decision of the Commissioner of the Social Security Administration denying Social Security disability benefits.[2] In accordance with 28 U.S.C. § 636(c)(1) & (3) the parties have consented to proceed before a United States Magistrate Judge.

The role of the Court in reviewing the decision of the Commissioner under 42 U.S.C. §405(g) is limited to determining whether the decision is supported by substantial evidence and whether the decision contains a sufficient basis to determine that the Commissioner has applied the correct legal standards. *Winfrey v. Chater*, 92 F.3d 1017 (10th Cir. 1996); *Castellano v. Secretary of Health & Human Servs.,* 26 F.3d

---

[1] On February 1, 2007, Michael J. Astrue was confirmed as Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue is substituted for Jo Anne B. Barnhart the former Commissioner, as defendant in this case. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Plaintiff's March 4, 2003 application for disability insurance benefits was denied initially and upon reconsideration. A hearing before an Administrative Law Judge (ALJ) was held July 14, 2005. By decision dated July 26, 2005, the ALJ entered the findings which are the subject of this appeal. The Appeals Council denied review of the ALJ's decision on February 2, 2006. The action of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

1027, 1028 (10th Cir. 1994).  Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Doyal v. Barnhart*, 331 F.3d 758 (10th Cir. 2003). The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005).  Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. *White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

Plaintiff was born October 16, 1945, and was 59 years old at the time of the hearing. [R. 264].  She claims to have been unable to work since October 9, 1997, due to pain and limitations in both hands and arms, neck and low back. [R. 266, Plaintiff's brief, p. 1].  The ALJ determined that Plaintiff has severe impairments consisting of herniated cervical discs, C3-4, C5-6, lumbar spine disease and carpal tunnel syndrome. [R. 14].  Despite these impairments, the ALJ found that Plaintiff retains the residual functional capacity (RFC) to lift/carry 20 pounds occasionally or 10 pounds frequently; stand/walk or sit for 6 hours during an 8-hour workday with an occasional limitation on stooping. [R. 16].  He concluded Plaintiff is able to perform her past work as a secretary, office manager and auto body shop owner with this RFC. [R.16-17].  The case was thus decided at step four of the five-step evaluative sequence for determining whether a claimant is disabled.  *See Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing five steps in detail).

Plaintiff asserts the ALJ committed the following errors: 1) that he failed to properly analyze Plaintiff's Reflex Sympathetic Dystrophy Syndrome; 2) that his

credibility determination was improper; and 3) that he failed to include all Plaintiff's limitations in his RFC assessment. [Plaintiff's Brief, p. i]. For the following reasons, the Court finds this case must be reversed and remanded to the Commissioner for reconsideration.

### Reflex Sympathetic Dystrophy

Reflex Sympathetic Dystrophy (RSD) is defined as "a series of changes caused by the sympathetic nervous system, marked by pallor or rubor, pain, sweating, edema, or osteoporosis, following muscle sprain, bone fracture or injury to nerves or blood vessels. When limited to the upper extremity it is called shoulder-hand syndrome." *Dorland's Ill. Med. Dictionary* 520-521 (28th Ed. 1994). Plaintiff claims the ALJ's failure to include this condition as one of her medically determinable severe impairments at step two is error.

Review of the record reveals that the condition is mentioned once by Craig R. Wolff, M.D., the orthopedist who performed carpal tunnel (CTS) release surgery on Plaintiff's right hand. [R. 154-157]. Dr. Wolff examined Plaintiff on May 4, 1998, two months after the CTS surgery, reported continuing right hand complaints and wrote his impression as follows:

> She has multilevel disc disease in her neck, bulging discs in her lumbar spine as well as patella thermal disease in the left knee. Her right hand I believe at this point has reflex sympathetic dystrophy.

[R. 191].

The Court agrees with Defendant that this notation by Dr. Wolff was not a definitive diagnosis of RSD. [Defendant's brief, p. 4]. Such an isolated reference to the

possibility of the existence of the syndrome is not sufficient evidence to establish a medically determinable severe impairment and would not warrant reversal for the ALJ's failure to evaluate it as a severe impairment at step two. However, the ALJ failed to address Plaintiff's claim of impairment due to RSD, even after Plaintiff's attorney called his attention to it at the hearing. [R. 245, 256]. Plaintiff's attorney cited a Social Security Ruling (SSR) which specifically addresses how ALJs are required to evaluate the syndrome. SSR 03-2p, *Evaluating Cases Involving Reflex Sympathetic Dystrophy Syndrome/Complex Regional Pain Syndrome*, 2003 WL 22399117 (Oct. 20, 2003). Because this case is being remanded for reconsideration of the medical evidence and for such further development as is required in order to properly assess Plaintiff's functional limitations, the Commissioner is urged to make a more complete analysis of whether Plaintiff has a severe impairment of RSD, and if so, to include specific findings regarding Plaintiff's claim of RSD in accordance with SSR 03-2p.

### **Credibility Determination**

In his written decision, after summarizing Plaintiff's testimony at the hearing, the ALJ stated:

> Upon review of the record, the undersigned is not persuaded that the claimant's impairments are as severe as she alleges. She appears to have had little treatment for her conditions since 1999 and she listed no prescription medications. She is able to drive, shop for groceries, and do housework, albeit at a slower pace than previously. It seems doubtful to the undersigned that the claimant could do any of the activities she described herself doing if her neck, back, and leg pain was as intense as she described it.

\* \* \*

> The Administrative Law Judge does not discount all of the claimant's complaints and recognizes that her medical progress is not what she wishes it would be. However, the claimant's treating physicians did not place any functional restrictions on her activities that would preclude light work activity with the previously-mentioned restrictions. Given the objective medical evidence in the record, the Administrative Law Judge finds that the claimant's residual functional capacity is reasonable, and that the claimant could function within those limitations without experiencing significant exacerbation of her symptoms.

[R. 16] (exhibit citations omitted).

Plaintiff contends the ALJ improperly faulted Plaintiff for not pursuing treatment when he concluded Plaintiff's testimony regarding her limitations was not fully credible. The Court agrees. Both Plaintiff's treating physician and the neurosurgeon determined that Plaintiff needed a cervical diskectomy and fusion at three levels. [R. 163-164, 185]. The doctors discussed payment for this surgery with Plaintiff's attorney. [R. 185]. Dr. Wolff noted Plaintiff's inability to afford medications. [R. 191]. Plaintiff testified that she did not have surgery and had not received treatment because she did not have insurance and she could not afford it. [R. 279-280]. The ALJ failed to acknowledge Plaintiff's failure to have surgery because of inability to pay, which is error. *See Teter v. Heckler*, 775 F.2d 1104, 1107 (10th Cir.1985) (inability to afford surgery does not constitute an unjustified refusal and does not preclude recovery of disability benefits).

The ALJ commented that Plaintiff's treating physicians did not place any functional restrictions on her activities that would preclude light work activity with an occasional limitation on stooping. [R. 16]. However, Plaintiff's physicians noted Plaintiff's complaints of "significant pain" in her neck and arms, numbness and tingling in the hands, loss of strength in the thumb and wrist flexion and extension, constant

5

headaches, inability "to work and do the activities she wants to do," that she could "turn [her neck] only 5 degrees to the left and right," that she had a great deal of loss of range of motion of the lower back with pain on assuming an erect posture and had global weakness of her right arm. [R. 163, 185, 187, 188]. Neither physician suggested Plaintiff was malingering or exaggerating her symptoms and both believed Plaintiff needed surgery to treat these complaints. Rather than undermining Plaintiff's claims, the medical treatment records provide corroboration for her testimony regarding her pain and exertional limitations.

The ALJ also characterized Plaintiff's daily activities as being able to drive, shop for groceries and do housework "albeit at a slower pace than previously" as a factor weighing against Plaintiff's credibility. Daily activities are among the factors the ALJ may consider in determining the credibility of the claimant. *See Hargis v. Sullivan,* 945 F.2d 1482, 1489 (10th Cir.1991); *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993) (quotations omitted). However, Plaintiff asserted that her activities were sporadic and minimal because of pain and limitation of movement. [R. 276, can read about five minutes; R. 279, write about five minutes; R. 128, 280, takes all day to do housework that formerly took a couple hours; R. 283, twice as long to grocery shop with rest breaks]. "The sporadic performance of household tasks or work does not establish that a person is capable of engaging in substantial gainful activity." *Frey v. Bowen*, 816 F.2d 508, 516-17 (10th Cir. 1987) (citing *Broadbent v. Harris*, 698 F.2d 407, 413 (10th Cir.1983)). The ALJ pointed to no medical evidence that contradicts Plaintiff's claims in this regard. As noted above, no medical person has ever suggested that Plaintiff exaggerated her symptoms and should not be in pain. The ALJ's decision implies he

6

determined Plaintiff suffered from some degree of pain but he failed to adequately address the level of pain he found Plaintiff to have, even though it was not disabling. *See Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir.2004) (ALJ's failure to inform in "meaningful, reviewable way" of how evidence was considered in credibility determination required reversal).

The ALJ's determination that Plaintiff's allegations of disabling pain were not credible is therefore not supported by substantial evidence. Although the Court ordinarily defers to the ALJ as trier of fact on credibility, *see, e.g., Hamilton v. Sec'y of Health & Human Servs.,* 961 F.2d 1495, 1499 (10th Cir.1992); *Casias v. Sec'y of Health & Human Servs.,* 933 F.2d 799, 801 (10th Cir.1991), "deference is not an absolute rule." *See Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993) (reversing ALJ on credibility).

### RFC Assessment

The ALJ concluded that Plaintiff is able to perform light work activity. [R. 16]. The only additional restriction the ALJ found was imposed by Plaintiff's impairments was occasional stooping. [R. 16]. He concluded Plaintiff could return to her past relevant work as a secretary, office manager and auto body shop owner. [R. 16-17]. The vocational expert (VE) testified at the hearing that Plaintiff's past work as a secretary and office manager were performed at the sedentary exertional level and that the auto body shop owner job, both as Plaintiff performed it and as generally performed, is a light exertional level job. [R. 259]. Under questioning by Plaintiff's attorney, the VE testified that Plaintiff's past work required good bimanual, manual dexterity, fingering and handling and that if Plaintiff had problems with fine motor skills and manual

dexterity and if she had limitations in her head and neck movement, those jobs (and any jobs) would be eliminated. [R. 289-290].

At step two, the ALJ had found Plaintiff had severe impairments of herniated cervical discs, lumbar spine disease and carpal tunnel syndrome (CTS).[3] [R. 14]. Nowhere in his decision did the ALJ discuss any of the evidence in the record indicating that Plaintiff's mobility and motor dexterity was limited as a result of her herniated discs and carpal tunnel syndrome.  On remand, if the analysis proceeds to step four, the ALJ will need to make specific findings on the record about possible limiting factors. Further, for the ALJ to conclude validly that Plaintiff can return to her past relevant work, the ALJ is required to make specific findings concerning: (1) Plaintiff's RFC; (2) the functional demands of each of Plaintiff's past jobs; and (3) Plaintiff's ability to return to these past jobs with the RFC the ALJ determines Plaintiff to have. *See Winfrey,* 92 F.3d at 1023.

## **Conclusion**

The Court cannot say that the record contains substantial evidence to support the determination of the ALJ that Plaintiff is not disabled.  Accordingly, the decision of the Commissioner finding Plaintiff not disabled is REVERSED and REMANDED to the Commissioner for reconsideration and for further proceedings as are necessary after such reconsideration.

---

[3] Carpal tunnel syndrome is "a complex of symptoms resulting from compression of the median nerve in the carpal tunnel, with pain and burning or tingling paresthesias in the fingers and hand, sometimes extending to the elbow." *Dorland's Illustrated Medical Dictionary*, 28th ed., p. 1626. "This compression produces paresthesias in the radial-palmar aspect of the hand plus pain in the wrist, in the palm, or sometimes proximal to the compression site in the forearm and shoulder. Sensory deficit in the first 3 digits and/or weakness and atrophy in the muscles controlling thumb abduction and apposition may follow." *The Merck Manual*, (Robert Berkow, M.D., et al., eds., 16th ed. 1992), p. 1519.

SO ORDERED this 28th day of February, 2007.

_____
FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE